IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**KAREN LYNNE FRYE,**

    **Plaintiff,**

vs.                                                        **CIVIL ACTION NO. 5:20-CV-00229**

**ANDREW SAUL,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered April 6, 2020 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is Plaintiff's Memorandum of Plaintiff's Motion for Judgement on the Pleadings as well as Defendant's Brief in Support of Defendant's Decision (ECF Nos. 19, 20).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for remand (ECF No. 19), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 20); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Karen Lynne Frye (hereinafter referred to as "Claimant"), protectively filed her application for Title II benefits on August 17, 2016 alleging disability beginning March 1, 2015[1] due to severe ulcerative colitis, Graves' disease/hyperthyroid issue, osteopenia, and irritable bowel syndrome.[2] (Tr. at 207, 226) Her claim was initially denied on December 21, 2016 (Tr. at 81-91) and again upon reconsideration on March 13, 2017 (Tr. at 95-101). Thereafter, Claimant filed a written request for hearing on April 7, 2017. (Tr. at 102-103)

An administrative hearing was held on March 12, 2019 before the Honorable Julianne Hostovich, Administrative Law Judge ("ALJ"). (Tr. at 29-56) On April 4, 2019, the ALJ entered an unfavorable decision. (Tr. at 9-28) On April 11, 2019, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 204-206) The ALJ's decision became the final decision of the Commissioner on January 31, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On April 3, 2020, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) Defendant (hereinafter referred to as "the Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 13, 14) Subsequently, Claimant filed a Memorandum in Support of Plaintiff's Motion for Judgement on the Pleadings (ECF Nos. 19), and in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 20). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

---

[1] At the administrative hearing, Claimant amended her alleged onset date to March 5, 2018, which coincided with her 55th birthday. (Tr. at 52)
[2] Claimant had also alleged that she stopped working August 5, 2014 because she "[w]as laid off from employment then my medical conditions worsened." (Tr. at 226; Tr. at 35)

As noted *supra*, Claimant was 55 years old as of the amended alleged onset date and would be defined as a "person of advanced age" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 52) Claimant has a high school education and her past relevant work consisted of working as a file clerk, receptionist, bank teller, and cashier. (Tr. at 21, 35-37, 227)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform

other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this particular case, the ALJ found Claimant met the insured status requirements through December 31, 2019. (Tr. at 14, Finding No. 1) Next, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since March 5, 2018, the amended alleged onset date. (Tr. at 15, Finding No. 2) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: ulcerative colitis/irritable bowel syndrome; degenerative disc disease of the cervical spine; and osteopenia. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except "the claimant can frequently climb ramps and stairs; can occasionally climb ladders, ropes or scaffolds; and can frequently balance, stoop, kneel, crouch and crawl." (Tr. at 17, Finding No. 5) At step four, the ALJ found that Claimant is capable of performing past relevant work as a teller, cashier, receptionist, and/or file clerk. (Tr. at 21, Finding No. 6) Finally, the ALJ determined Claimant had not been under a disability since March 1, 2015 through the date of the decision. (Tr. at 23, Finding No. 7)

**Claimant's Challenges to the Commissioner's Decision**

Claimant has asserted that the ALJ failed to account for Claimant's limitations as they related to her ulcerative colitis or irritable bowel syndrome, which were determined to be severe impairments, resulting in a flawed RFC assessment that is unsupported by substantial evidence. (ECF No. 19 at 6) Claimant asks the Court to remand this matter to correct this error. (Id.)

In response, the Commissioner contends that the ALJ properly considered Claimant's complaints of disabling bowel symptoms, and noted that the objective medical evidence and other evidence of record did not support her allegations. (ECF No. 20 at 11-13) The ALJ determined Claimant's RFC assessment based upon the limitations that was supported by the record of evidence, and is supported by substantial evidence. (Id. at 13-14) The Commissioner contends the final decision is supported by the substantial evidence and asks this Court to affirm. (Id. at 14)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

The Medical Evidence:

Four years prior to the relevant period, on March 27, 2014, Claimant presented for a two-month recheck with gastroenterologist Charles F. Bou-Abboud, M.D. (Tr. at 392) Claimant reported that she did well when she took her prescribed Canasa, with no constipation, loose stools, bleeding, melena, proctalgia, rectal itching, abdominal pain, nausea, or vomiting (Id.). She reported that her appetite was good, and her weight was recorded at 140 pounds (Id.). Dr. Bou-Abboud noted that Claimant was well appearing and in no distress (Tr. at 393). Her bowel sounds were normal with diffuse non-specific abdominal tenderness and no organomegaly, masses, or

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

hernia (Id.).

On September 29, 2014, Claimant presented to Dr. Bou-Abboud for a six-month recheck (Tr. at 390). Claimant stated that she was fine if she used Canasa (Id.). She again weighed 140 (Id.). Dr. Bou-Abboud noted that Claimant "has overall been stable on the current therapeutic regimen" and that she had no constipation, diarrhea, rectal bleeding, proctalgia, rectal itching, or abdominal pain (Id.). Her bowel sounds were normal (Tr. at 391).

On December 3, 2014, Claimant presented to Dr. Bou-Abboud for a recheck (Tr. at 388). Dr. Bou-Abboud again reported that Claimant was stable on her current therapeutic regimen with no constipation, diarrhea, or rectal bleeding (Id.). Her weight remained stable and her appetite was good (Id.). She was well appearing and in no distress with normal bowel sounds (Tr. at 389). On January 13, 2015, Claimant reported that she was having no problems (Tr. at 386). Her weight was stable, her appetite was good, and there was no obvious sign of gastrointestinal blood loss (Tr. at 386-387).

Three years prior to the relevant period, on March 12, 2015, Claimant's weight continued to be stable and her appetite was good (Tr. at 384). She reported having at least two semi-formed stools per day, occasionally up to four times per day (Tr. at 385).

On May 14, 2015, Claimant reported having constant diarrhea and bleeding with a lot of bloating (Tr. at 382). She told Dr. Bou-Abboud that her symptoms started after she stopped taking Canasa, but did not improve after she resumed it (Id.). Her weight remained stable, but her appetite was poor (Id.). Dr. Bou-Abboud noted that Claimant was well appearing and in no distress (Id.). Her abdomen was tender to palpation with guarding and rebound (Tr. 382). Dr. Bou-Abboud prescribed Entocort, Bentyl, Apriso, and Canasa, and advised her to follow up in one week if she

had not improved (Id.). One week later, on May 21, 2015, Claimant reported that the medication had helped (Tr. at 379). Dr. Bou-Abboud advised her to continue her medication regimen (Id.).

On June 23, 2015, Claimant reported to Dr. Bou-Abboud that she had some days with a lot of diarrhea (Tr. at 376). However, her weight was stable, and her appetite was good (Id.). On examination, Claimant's bowel sounds were normal, but her abdomen was tender to palpation with guarding and epigastric rebound (Id.). Dr. Bou-Abboud ordered an EGD with small bowel biopsies and an ultrasound of Claimant's abdomen (Tr. at 377).

On July 23, 2015, Claimant reported that she was feeling better, but she was having some reflux (Tr. at 372). Her bowel sounds were normal, and her abdomen was tender to palpation (Tr. at 373). Dr. Bou-Abboud reported that the EGD and ultrasound showed only mild to moderate gastritis and mild to moderate ulcerative colitis (Tr. at 372). Her ulcerative colitis was isolated to the descending colon, and biopsies of the transverse, ascending, and recto-sigmoid colon were normal (Tr. at 395). There was no granulomata or dysplasia (Tr. at 400). The colon architecture was preserved and was without significant inflammatory infiltrates (Tr. at 399). Gastric change was mild and non-specific, with no active gastritis or helicobacter pylori (Tr. at 397). The small intestinal mucosa was without significant change (Tr. at 398). There was no villous abnormality or parasitic change (Id.). There was no malabsorption syndrome, such as celiac disease (Id.). There were no significant inflammatory infiltrates within the intestines (Id.). An abdominal ultrasound was unremarkable with no abnormality of the liver, hepatic vein, gallbladder, kidneys, spleen, or pancreas (Tr. at 405).

On August 3, 2015, Claimant reported that she had no diarrhea (Tr. at 370). Her weight was stable, and her appetite was good (Id.). She was well appearing and in no distress, and her

abdomen was nontender to palpation with normal bowel sounds (Id.). Examination results were the same on August 24, 2015 (Tr. at 367).

On October 5, 2015, Claimant weighed 149 pounds, and she reported having at least two bowel movements per day but no loose stools (Tr. at 363-364). Her bowel sounds were normal, and her abdomen was tender to palpation (Tr. at 365). On December 3, 2015, Dr. Bou-Abboud noted that Claimant's condition had improved on medication, she was having no diarrhea, her weight was stable, and her appetite was good (Tr. at 361). On January 18, 2016, Claimant reported having at least four bowel movements a day, but her weight was stable (152 pounds), her appetite was good, and her bowel sounds were normal (Tr. at 358).

Two years prior to the relevant period, on March 3, 2016, Claimant reported having at least two bowel movements per day, and her weight was stable, her appetite was good, and there was no obvious sign of gastrointestinal blood loss (Tr. at 355). Dr. Bou-Abboud noted that she was well appearing and in no distress (Tr. at 356). On April 21, 2016, Claimant reported diarrhea three to four times per day (Tr. at 349). However, Dr. Bou-Abboud noted that she had been overall stable on her current therapeutic regimen, her weight was stable, and her appetite was good (Tr. at 348-349).

On August 3, 2016, Claimant reported that she was still having at least four bowel movements per day, alternating from normal to diarrhea (Tr. at 346). Claimant was well-appearing and in no distress, her bowel sounds were normal, and her abdomen was tender to palpation (Id.). Dr. Bou-Abboud noted that Claimant had lost nine pounds over four months, but her appetite was good (Id.). Later in the month, on August 24, 2016, Claimant reported significant bleeding with bowel movements, increased frequency of diarrhea (six to eight times per day), and diffuse

abdominal cramping (Tr. at 342). However, her weight was stable, and her appetite was good (Tr. at 343). Dr. Bou-Abboud reported that Claimant was well appearing and in no distress, and her bowel sounds were normal (Id.). He adjusted her medication regimen (Tr. at 342-343).

On September 28, 2016, Claimant reported to Dr. Bou-Abboud that she had a "wonderful" vacation (Tr. at 425). She reported that the Canasa really helped her to feel better, and she had not noted any additional bleeding (Id.). Dr. Bou-Abboud noted that Claimant had been overall stable on her current therapeutic regimen, she was not having any diarrhea, her weight was stable, and her appetite was good (Id.).

On January 16, 2018, Claimant saw Dr. Bou-Abboud for a six-month follow up appointment (Tr. at 543). Dr. Bou-Abboud noted that Claimant had overall been stable on her current therapeutic regimen (Tr. at 545). She had no diarrhea, proctalgia, rectal itching, abdominal pain, or cramps (Id.). Her weight was stable, and her appetite was good (Id.). She was well appearing and in no distress, and her bowel sounds were normal (Id.).

On September 4, 2018, Claimant reported no abdominal complaints when she traveled by motorcycle from West Virginia to North Myrtle Beach (Tr. at 589).

On October 24, 2018, Claimant saw Dr. Bou-Abboud for a follow up appointment (Tr. at 607). She reported that she was doing better with rectal bleeding since she started using Canasa daily (Id.). She was overall stable on her current therapeutic regimen, with no diarrhea or abdominal pain, stable weight, and good appetite (Id.).

Claimant's Statements and Testimony:

Claimant testified that she stopped working as a file clerk in 2014 after she was laid off (Tr. at 34-35). Previously, she had worked as a cashier for her husband's archery bow shop (Tr. at

38). She testified that she was no longer able to work because she was "just sick all the time" (Tr. at 42). She testified that she needed to use the restroom 40 to 50 times per day for 20 minutes or longer each time (Tr. at 43). Additionally, she was unable to sit comfortably for more than 5 to 10 minutes due to her colitis, which caused abdominal swelling and pain (Tr. at 45). She testified that she could only stand for about 15 to 20 minutes before needing a break (Tr. at 46). She did not feel that she could walk for even one block (Id.).

Claimant testified that she lived with her husband (Tr. at 48). On a typical day she did some household chores such as making the bed and straightening up around the house (Tr. at 49). She was able to drive a car, but the only place she drove by herself was to nearby doctors' appointments (Id.). She testified that when her bowel problems were in remission, she saw her gastroenterologist every six weeks, but when she was having a flare-up of her symptoms, she saw him every week to every two weeks (Id.). She testified that her symptoms flared once per month and that, since 2015, the longest she had gone without a flare was three months (Tr. at 50).

In an Adult Function Report submitted in connection with her application for disability benefits, Claimant reported that she had no problem with her personal care (Tr. at 243). Her typical daily activities included caring for her pet cat, preparing simple meals, and, when she was feeling well, doing laundry, cleaning her house, ironing, and sweeping her porch (Tr. at 243-244). She reported that she was able to drive a car and go shopping in stores for groceries and household items (Tr. at 245). She socialized with others in person, on the phone, and by text message (Tr. at 246).

Vocational Evidence:

The VE testified that a hypothetical individual with Claimant's vocational characteristics

and RFC for a limited range of light work would be capable of performing Claimant's past relevant work as a teller, a cashier, an assistant manager of a store, a receptionist, and a file clerk (Tr. at 53-54).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As noted *supra*, Claimant takes issue with the RFC assessment because it omits any limitations or restrictions resulting from her ulcerative colitis or irritable bowel syndrome, found

to be a severe impairment, that the Regulations recognize cause significant limitations on an individual's ability to perform basic work activities. (ECF No. 19 at 5-6)

As noted by the ALJ, the RFC finding was determined after considering Claimant's symptoms and the extent to which her symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of Social Security Ruling ("SSR") 16-3p and 20 C.F.R. § 404.1529. (Tr. at 17) This Ruling directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

Here, the ALJ first considered Claimant's application for disability insurance benefits noting that she alleged she was unable to work due to her severe impairments, listed *supra*, as well as other non-severe impairments. (Tr. at 17, 15, 225-233) The ALJ then considered Claimant's statements concerning the effect of her impairments and/or symptoms on her functional abilities and deemed them not fully persuasive. (Tr. at 17, 242-249, 260-267) In addition to outlining various inconsistencies in her statements relating to her functional limitations, the ALJ noted that Claimant admitted independence in personal care; she fed and watered a pet cat; she prepared meals; she performed household chores including laundry, cleaning, ironing, and sweeping; she went out regularly, including driving and going out alone; she shopped in stores; she socialized with others both in person and via electronic means. (Tr. at 17-18, 242-249, 260-267)

With regard to her bathroom issues, the ALJ considered Claimant's hearing testimony, noting that "she could not work because she had no 'quality of life' . . . she was sick all the time .

. . she had 40 to 50 bathroom visits per day, with visits lasting 20 minutes or longer at times; an allegation not supported by the medical evidence, including records absent any such report to treating sources and a stable weight." (Tr. at 18) Additionally, the ALJ noted that Claimant testified "she had 'flares' every month, with the longest period without a 'flare' being three months . . . She contended she saw 'Dr. Charles' every six months, but more often every two weeks, and at times every week; testimony directly contraindicated by medical records absent such a persistent frequency." (Id.) The ALJ remarked that when asked about daily activities, Claimant's "responses were evasive and suggestive of an effort to minimize activities." (Id.)

Next, the ALJ discussed the medical records, detailed *supra*; notably, the ALJ observed that testing in late 2014 and early-mid 2015 was consistent with ulcerative colitis and some gastritis, with neither being more than mild to moderate in degree. (Id.) The ALJ noted no significant findings, and since the amended alleged onset date of March 5, 2018, "medical records are absent evidence of significant diagnostic progression or worsening." (Tr. at 18, 394-402, 405) It was further noted that clinical objective findings prior to and during the relevant period at issue were minimal and largely benign, though the ALJ acknowledged Claimant exhibited intermittent subjective based abdominal tenderness as well as "rare, acute diffuse abdominal bloating and subjective pain", despite no abdominal masses or bruits and with routinely normal bowel sounds. (Tr. at 18-19) The ALJ also considered that the medical records indicated Claimant "routinely presented as well appearing, in no distress, very pleasant and cooperative" and that her "weight was relatively stable, with records consistent with an average weight routinely within the 140's." (Tr. at 19, 299-337, 340-409, 410-422, 423-482, 499-507, 522-532, 543-545, 555-576, 604-610)[4]

---

[4] The ALJ referenced the medical records predating the amended alleged onset date, including: progress notes from Beaver Family Clinic from March 31, 2016 to July 18, 2016; Treatment notes from Charles Bou-Abboud, M.D., dated

The ALJ again emphasized that

> Such aforementioned findings, and especially the claimant's stable weight and well appearing appearance, further contraindicate the claimant's uncorroborated hearing testimony of 40 to 50 bathroom visits per day lasting at times 20 minutes or more. Medical records were equally absent reports by the claimant of such an extreme frequency and duration. Since March 5, 2018, the claimant rarely if ever reported multiple daily restroom visits. Even prior to the period at issue, the general report was of two daily movements, at times four daily movements (e.g. Exhibits 4F/3, 7, 10, 13, 16, 19, 22, 25, 34, 40, 46, 47; 6F/3; and 14F). There was only one report of four to eight movements (i.e. Exhibit 4F/23, July 2015) and one report of six to eight movements (i.e. Exhibit 4F/3, August 2016), with such a frequency not persisting at the time of the next visit and with no more aggressive care, such as inpatient treatment or surgery, required.

(Tr. at 19, 342, 346, 349, 352, 355, 358, 361, 364, 373, 379, 385, 386, 425, 543-545; Tr. at 362; Tr. at 342) The ALJ then examined how the medical records during the relevant period failed to support Claimant's allegations of frequent medical visits for her colitis/IBS, noting that they were actually "infrequent" with regular visits once every six months, not bi-weekly or recurrent and medically necessary crisis intervention or extensive inpatient care. The ALJ also noted that prior to the relevant period, Claimant reported in September 2016 that she had a "wonderful" vacation and no complaint of significant symptoms. (Tr. at 19, 425) The ALJ then noted that during the relevant period, in September 2018, Claimant did not report abdominal complaints when traveling by motorcycle from West Virginia to North Myrtle Beach. (Tr. at 19, 588-594) While the ALJ acknowledged that "a vacation and/or trip and a disability are not necessarily mutually exclusive,

---

December 9, 2014 to August 24, 2016; Dr. Bou-Abboud's radiology reports/procedures from December 9, 2014 to September 14, 2016; Dr. Bou-Abboud's progress notes from March 27, 2014 to September 28, 2016; progress notes from Beaver Family Clinic from October 26, 2016 to November 7, 2016; progress notes and lab reports from Beaver Family Clinic from January 9, 2017 to February 14, 2017; a progress note from Dr. Bou-Abboud dated January 16, 2018; and office treatment notes from Beaver Family Clinic dated July 28, 2017 to February 5, 2018.
Since the amended alleged onset date, the ALJ referenced office treatment records from Dr. Bou-Abboud dated October 24, 2018.

the claimant's engagement in such activities further suggests that the alleged symptoms and limitations may have been overstated." (Tr. at 19)

After considering this evidence, the ALJ determined that Claimant's activities "remained wide-ranging and high functioning. Even granting that she might perform some activities slowly, with difficulty, or with rest breaks for example the level of activity documented did not equate to the degree of impairment and symptoms alleged." (Tr. at 20) Additionally, the ALJ recognized that while state agency consultants opined that Claimant was capable of light exertional work, the more restrictive limitations were unwarranted, finding that they "placed significant reliance upon a history of gastrointestinal bleed due to colitis; however, there was no such ongoing deficit or frequent deficit and complications during the period at issue." (Tr. at 20, 57-67, 69-79) The ALJ summed up her findings: objective diagnostic findings were stable; no surgical intervention or more aggressive care was required; objective clinical findings were largely benign; there was no evidence of significant and persistent deficits; treatment was conservative; and Claimant's daily activities were wide ranging and high functioning. (Tr. at 20-21) Ultimately, the ALJ determined that in light of this evidence, the RFC was adequate to accommodate Claimant's impairment-related limitations since March 8, 2015. (Tr. at 21)

As noted *supra*, at steps four and five of the sequential analysis, the Regulations mandate that an ALJ must determine a claimant's RFC for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See SSR 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider a claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545. "This assessment of your remaining capacity for work is not a decision on whether

you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. § 404.1546.

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

While Claimant does not specify what other limitations stemming from her bowel issues should have been considered, it is significant that given the conflicting evidence consisting of Claimant's allegations of her frequent bathroom breaks and other symptoms with the objective and other evidence of record, the ALJ is solely responsible for resolving the conflict. The issue before the Court is whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1995). The ALJ provided an adequate review that included not only Claimant's testimony, but also the objective medical evidence of record and other evidence of record. It is significant that no physician of record found Claimant disabled, but instead that she was capable of some level of work. In short, the ALJ provided a fairly thorough and adequate review of Claimant's complaints

as they related to her colitis/IBS, reconciled them with the medical and other evidence of record, and ultimately determined that her symptoms did not limit her to the extent alleged.[5]

In sum, the undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned **FINDS** the ALJ's discussion of the objective and other evidence of record in his evaluation of Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms, and that the ALJ's conclusion that Claimant's statements were inconsistent with the evidence of record complied with the applicable law and supported by substantial evidence. The undersigned **FINDS** that in light of the ALJ's analysis of the evidence of record as it related to Claimant's colitis/IBS, the RFC assessment is based upon substantial evidence. Finally, the undersigned **FINDS** that the final decision denying Claimant's application for benefits is supported by the substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for remand (ECF No. 19), **GRANT** the Commissioner's request to affirm the decision below (ECF No. 20), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District

---

[5] Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." (quoting Craig, 76 F.3d at 589)).

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: January 8, 2021.



Omar J. Aboulhosn
United States Magistrate Judge